UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOAO VICTOR BRUM BORGES,

Petitioner,

v.                                                    No. 25-cv-11640-IT

ANTOINE MONIZ, *et al.*,

Respondents.

**RESPONDENTS' OPPOSITION TO
PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1)**

The Court should deny Petitioner Joao Victor Brum Borges's Petition for a Writ of

Habeas Corpus.  Doc. No. 1.  Petitioner requests immediate release from immigration detention.

*Id*. at 1, 3.  To the contrary, ICE maintains that it is holding Petitioner lawfully in mandatory

detention under 8 U.S.C. § 1225(b)(2)(A).  Accordingly, the Court should dismiss the petition.

I.      **BACKGROUND**

        **A.      ICE Declaration**

        "Petitioner is a native and citizen of Brazil."  Ex. 1, Chan Decl. (June 13, 2025), ¶ 7.  In

June 2021, U.S. Customs and Border Protection ("CBP") encountered Petitioner "and his father

at the southern border of the United States in the area of San Luis, Arizona."  *Id*. ¶ 8.  CBP found

that "Petitioner was not in possession of a valid unexpired immigrant visa, reentry permit, border

crossing identification card, or other valid entry document," nor did Petitioner have "a valid

unexpired passport, or other suitable travel document, or document of identity and nationality."

*Id*.  "CBP detained the Petitioner without a warrant" and "Petitioner's father claimed that they

feared persecution or torture if returned to Brazil."  *Id*. ¶ 9.  Thereafter, "CBP issued a Notice to

Appear, alleging the Petitioner was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)."  *Id*. ¶

10.  Petitioner "was not admitted or paroled after inspection by an immigration officer."  *Id*.

U.S. Immigrations and Customs Enforcement ("ICE") then "released the Petitioner on an Order

of Recognizance ("OREC")."  *Id*.  One month later, on July 9, 2021, "the Notice to Appear was

filed with the immigration court."  *Id*. ¶ 11.

More than three years later, on December 19, 2024, Petitioner was arraigned in

Cambridge District Court for "assault and battery on [a] disabled person over 60 with injury,"

which violated his OREC conditions.  *Id*. ¶ 12.

A few months later, on May 28, 2025, Petitioner's "U.S. citizen spouse filed Form I-130,

Petition for Alien Relative, on the Petitioner's behalf with United States Citizenship and

Immigration Services[.]"  *Id*. ¶ 13.  That application is pending.  *Id*.

Days later, on June 4, 2025, "ICE detained the Petitioner pursuant to its authority [under]

8 U.S.C. § 1225(b) after the Petitioner initiated a motor vehicle chase."  *Id*. ¶¶ 5, 14.  "Petitioner

is currently detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts."

*Id*. ¶ 15.  Petitioner's "removal proceedings remain pending before the immigration court."  *Id*.

¶ 16.

### B.    The Petition

Petitioner alleges that he "is a Brazilian national in removal proceedings at the Boston

Immigration Court."  Pet. for Writ of Habeas Corpus (June 5, 2025), Doc. No. 1 ¶ 1 ("Pet.").

Petitioner further alleges that he is married to a United States citizen, and that he is "the

beneficiary of a pending I-130 Petition for Alien Relative with United States Citizenship and

Immigration Services."  *Id*. ¶¶ 1, 15.  "On information and belief, [Petitioner] was unlawfully

detained by federal immigration agents outside of his home in Tewksbury, MA on June 4, 2025."

*Id.* ¶¶ 1, 13.  Petitioner alleges that he is "detained at the Plymouth County Correctional Facility[.]" *Id.* ¶ 16.

The Petition asserts a single cause of action challenging Petitioner's arrest and detention as violating the Fifth Amendment's due process clause.  *Id.* ¶ 16.  Petitioner claims that his arrest and detention were "without cause and in violation of his constitutional rights to due process of law," but does not otherwise allege why his arrest and detention are unlawful.  *Id.*  Petitioner asks the Court to "[d]eclare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment," and "[i]ssue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately."  *Id.* at 3.

## II.    LEGAL STANDARD

Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions.  It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treatises of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## III.    ARGUMENT

### A.    Petitioner is Lawfully Detained as an Applicant for Admission Under 8 U.S.C. § 1225(b)(2)(A)

An applicant for admission is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States [] whether or not at a designated port of arrival . . . ."  8 U.S.C. § 1225(a)(1).  The term "admitted" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

As explained by the Supreme Court, "an alien who tries to enter the country illegally is treated as an 'applicant for admission' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry[]'" into the United States. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (citations omitted). Stated another way, an "alien who arrives at a 'port of entry,' *i.e.*, a place where an alien may lawfully enter, must apply for admission. An alien . . . who is caught trying to enter at some other spot is treated the same way." *Id.* at 108.

Accordingly, Petitioner is an "applicant for admission." And 8 U.S.C. § 1225(b)(2) "serves as a catchall provision" and "applies to all applicants for admission not covered by § 1225(b)(1) . . . ." *Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 113 (D. Mass. 2020) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). In other words, § 1225(b)(2) applies to "aliens present in the United States who have not been admitted or paroled and who are inadmissible for reasons other than fraud, misrepresentation, or lack of valid documentation, or who can demonstrate that they have been present in the United States for more than two years, and arriving aliens who are inadmissible for reasons other than fraud, misrepresentation, or lack of valid documentation."[1] *Bollat Vasquez*, 460 F. Supp. 3d at 113. "Any (b)(2) applicants," like Petitioner, "who are 'not clearly and beyond a doubt entitled to be admitted' are processed not through 'expedited removal' proceedings, but through standard removal proceedings under 8 U.S.C. § 1229a." *Id.*

The Board of Immigration Appeals ("BIA"), in *Matter of Q. Li*, recently held that an

---

[1] Here, "CBP issued a Notice to Appear, alleging the Petitioner was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)[,]" Chan. Decl. ¶ 10, which is a reason "other than fraud, misrepresentation, or lack of valid documentation," 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

4

individual with a factually and procedurally similar background to Petitioner's was detained pursuant to 8 U.S.C. § 1225(b) and not eligible for a bond hearing. 29 I. & N. Dec. 66, 70 (BIA 2025). In that case, the individual similarly crossed the southern border without being inspected and admitted or paroled. *Id.* at 67. Two years later, after the individual was paroled under 8 U.S.C. § 1182(d)(5)(A), ICE arrested and detained her for purposes of removal proceedings. *Id.* The BIA determined that the individual was subject to detention under 8 U.S.C. § 1225(b), rather than 8 U.S.C. § 1226(a), and therefore ineligible to seek a bond hearing, because she was an applicant for admission who had been arrested and detained while arriving in the United States. *Id.* at 69.

Accordingly, ICE's position is that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A) because Petitioner remains an applicant for admission as an "alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Petitioner's custody pursuant to 8 U.S.C. § 1225(b)(2)(A) subjects him to mandatory detention. *See* 8 U.S.C. § 1225(b)(2)(A). As explained by the Supreme Court, § 1225(b)(2) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. In declining to find a statutory requirement to conduct bond hearings for applicants for admission, the Supreme Court explained that "nothing in the statutory text imposes any limit on the length of detention" nor "says anything whatsoever about bond hearings." *Id.*; *see also id*. at 302 (explaining that § 1225 authorizes detention of such individuals "throughout the completion of applicable proceedings and not just until the moment those proceedings begin"); *Thuraissigiam*, 591 U.S. at 111 ("Whether an applicant who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release.").

5

**B.      Petitioner's Detention is Constitutional Because Applicants for Admission Have Limited Due Process Rights**

Petitioner's claim that his detention violates the Fifth Amendment's due process clause is without merit because the Supreme Court has held that applicants for admission are entitled only to the protections set forth by statute and that "the Due Process Clause provides nothing more." *Thuraissigiam*, 591 U.S. at 140; *see* Pet. ¶ 16.

Applicants for admission lack any constitutional due process rights with respect to admission aside from the rights provided by statute: "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. U.S. ex. rel. Mezei*, 345 U.S. 206, 212 (1953) (citation omitted).  In *Mezei*, for example, the Supreme Court held that a returning lawful permanent resident's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process.  *Id*. at 207, 215. And even though he had resided in the United States previously, he had since been "permanently excluded from the United States on security grounds."  *Id.* at 207.  The Supreme Court held that Mr. Mezei's detention did not "deprive[ ] him of any statutory or constitutional right."  *Id.* at 215.  Instead, the Court reiterated that "the power to expel or exclude aliens" is a "fundamental sovereign attribute exercised by the Government's political departments" that is "largely immune from judicial control."  *Id.* at 210. The Court recognized that "once passed through our gates, even illegally," aliens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."  *Id.* at 212.  But "an alien on the threshold of initial entry stands on a different footing" than an alien who has effected an entry into the United States.  *Id.*

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, explaining that an individual who illegally

6

crosses the border—like Petitioner—is an applicant for admission and "has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 139-40. "When an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country . . . ." *Id*. at 139. Moreover, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The Court held that this same "threshold" rule applies to individuals, like Petitioner, who are apprehended after trying "to enter the country illegally" since by statute, such individuals are also defined as applicants for admission. *See id.* at 139-40. Treating such an individual in a more favorable manner than an individual arriving at a port of entry would "create a perverse incentive to enter at an unlawful rather than a lawful location." *Id.* at 140.

The First Circuit also has held that detention of an individual seeking admission to the United States did not violate due process. *Amanullah v. Nelson*, 811 F.2d 1, 9 (1st Cir. 1987). In that case, the First Circuit explained that "the detention of the appellants [was] entirely incident to their attempted entry into the United States and their apparent failure to meet the criteria for admission—and so, entirely within the powers expressly conferred by Congress." *Id.* The appellants were detained pursuant to 8 U.S.C. § 1225(b) and the Court found no due process violation in the denial of their parole applications "pending the ultimate (seasonable) resolution of the exclusion/asylum proceedings" as there was "no suggestion of unwarranted governmental footdragging in these cases" and because "prompt attention appears to have been paid to the administrative aspects of exclusion and asylum." *Id.*

District courts around the country routinely find no due process violation in the detention of individuals subject to 8 U.S.C. § 1225(b). For example, in *Poonjani v. Shanahan*, the court

held that *Mezei* "is directly on point and controls this case" and that "because the immigration statues at issue here do not authorize a bond hearing, *Mezei* dictates that due process does not require one here."  319 F. Supp. 3d 644, 647-49 (S.D.N.Y. 2018) (citing *Mezei*, 345 U.S. at 212); *see also, e.g.*, *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (applying *Mezei* to hold that an individual's "detention [did] not violate due process because Congress has authorized mandatory detention for immigrants in [his] circumstances and that is sufficient to satisfy due process"); *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020) ("*Mezei* and its progeny do not hold that [p]etitioner has no due-process rights; rather, the applicable statutory process shapes her procedural due process rights.  Because [p]etitioner has no statutory right to release or a bond hearing . . . she has no due-process right to the relief requested."); *Aslanturk v. Hott*, 459 F. Supp. 3d 681, 694 (E.D. Va. 2020) (declining to "ignore binding, Supreme Court precedent" to award an applicant for admission a bond hearing since § 1225(b) does not provide for such hearing).  Other courts have held similarly, especially after the Supreme Court in *Thuraissigiam* reaffirmed its rule regarding the due process rights of applicants for admission.  *See, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676 (S.D. Tex. 2021) ("When a noncitizen attempts to unlawfully cross the border as [p]etitioner did, his constitutional right to due process does not extend beyond the rights provided by statute.").

To be sure, some district courts have concluded that further analysis is warranted to determine if an applicant for admission is entitled to a bond hearing under the Constitution once § 1225's mandatory detention becomes "unreasonably prolonged."  *See, e.g.*, *Pierre v. Doll*, 350 F. Supp. 3d 327, 331-32 (M.D. Pa. 2018) (holding that arriving aliens "have a due process right to an individualized bond consideration once it is determined that the duration of their detention has become unreasonable" (citation omitted)).  Here, however, ICE detained Petitioner only

recently. In short, therefore, Petitioner's detention is authorized by 8 U.S.C.

§ 1225(b) and does not violate the Constitution. *Cf. Demore v. Kim*, 538 U.S. 510, 523 (2003)

("[The] Court has recognized detention during deportation proceedings as a constitutionally valid

aspect of the deportation process.").

      In any event, Petitioner is entitled to ask ICE for discretionary parole from custody.

Parole provides another means of due process and should be exhausted before asserting a due

process claim in this Court. *See Traore v. Decker*, No. 19-cv-4612, 2019 WL 3890227, at *4

(S.D.N.Y. Aug. 19, 2019) (explaining that "by failing to file an application for or even

request[ing] parole, [p]etitioner has failed to exhaust his administrative remedies."); *Alexandre v.*

*Decker*, No. 17-cv-5706, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) (concluding that

"the parole procedure, as currently enforced, satisfies due process for 'arriving aliens' because

(1) they are differently situated than individuals within our borders, and (2) the period of

detention during such a proceeding is not indefinite—it will end upon the conclusion of the

removal proceeding").

## IV.   CONCLUSION

      For the foregoing reasons, the Court should deny the petition.

Dated: June 16, 2025                                Respectfully submitted,

                                                    LEAH B. FOLEY
                                                    United States Attorney

                                      By:    /s/ Julian N. Canzoneri
                                             Julian N. Canzoneri
                                             Assistant U.S. Attorney
                                             U.S. Attorney's Office
                                             John Joseph Moakley U.S. Courthouse
                                             One Courthouse Way, Suite 9200
                                             Boston, Massachusetts 02210
                                             (617) 748-3170
                                             julian.canzoneri@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on June 16, 2025.

                                             /s/ Julian N. Canzoneri
                                             Julian N. Canzoneri
                                             Assistant U.S. Attorney